# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GREGORY SHORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV238 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Gregory Shore, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on February 22, 2006. (Tr. 134-142.)[1] Plaintiff's DIB application alleges a disability onset date of January 1, 2002. (Tr. 134.) Plaintiff's SSI application alleges a disability onset date of July 2, 2002. (Tr. 139.) Both applications were denied initially and upon reconsideration. (Tr. 64-72, 78-99.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 100.) Plaintiff, his attorney, and a vocational expert ("VE") appeared at the hearing on May 28, 2009. (Tr. 32.) A decision was issued on August 18,

---

[1] Transcript citations refer to the administrative record.

2009, upholding the denial of Mr. Bailey's applications for DIB and SSI. (Tr. 18-27.) On January 28, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Defendant's final decision for purposes of judicial review. (Tr. 1-3.)

## II.  FACTUAL BACKGROUND

At the time of his date last insured, March 31, 2006, Plaintiff was thirty-seven years old. (Tr. 25.) He has a high school education and his past relevant work consisted primarily of maintenance supervisory work and landscaping work in which Plaintiff is no longer able to perform. (*Id.*) Plaintiff also has a history of alcohol and/or substance abuse. (Tr. 19.)

## III.  STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION

The Commissioner held that Plaintiff was not under a disability within the meaning of the Social Security Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano,* 599 F.2d 497, 599 (4th Cir.1979)). The Court does not conduct a *de novo* review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for

that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.; Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by [an] ALJ is not binding if it was reached by means of an improper standard or misapplication of law.").

## IV. THE ALJ'S DECISION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial activity by reason on any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(a). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[3] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(2)(A).

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3).
[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 404.1520. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). Under this process, the ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both his residual functional capacity (RFC)[4] and his vocational abilities. If so, the claimant is not disabled.

20 C.F.R. § 404.1520.

---

[4] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptom (e.g., pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Hines*, 453 F.3d at 562 (noting that regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis [which] . . . means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall*, 658 F.2d at 265.

4

Case 1:10-cv-00238-NCT-JLW   Document 16   Filed 02/05/13   Page 4 of 15

In this case, the ALJ assessed each step of the sequential process and concluded that Plaintiff was not disabled as of his date last insured. (Tr. 26.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since his alleged onset date of January 1, 2002. (Tr. 21.) The ALJ next found in step two that Plaintiff had severe impairments: morbid obesity, restrictive airways disease with a history of cigarette dependence, left lower extremity edema, obstructive sleep apnea, major depression disorder, personality disorder, substance addiction disorder, back pain, and diabetes mellitus. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 22.)

### B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony, the findings of treating and examining health care providers, and the state agency disability determination, rendered by non-examining health care providers. (Tr. 24-25.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform light work "[E]xcept need sit/stand option with nonexertional limitations of postural and environmental limitations." (*Id.* at 24.)[5] In reaching a conclusion about Plaintiff's RFC, the ALJ considered Plaintiff's symptoms and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 25.)

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.927(b).

5

### C. Past Relevant Work

The ALJ found in step four that Plaintiff was not capable of performing his past relevant work as a retail store maintenance supervisor and landscaper because it exceeds claimant's current physical and mental abilities. (*Id.*)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once the claimant has established at step four that he cannot do any work he has done in the past because of his severe impairments, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with his RFC, age, education and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was thirty-seven years old on his alleged disability onset date which is defined as a "younger individual age 18-49," with a high school education and the ability to communicate in English. (Tr. 25.) The ALJ noted that transferability of job skills was not at issue pursuant to the table rules set forth in the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2. (*Id.*) The ALJ found that based upon his RFC, Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and Plaintiff was therefore, not disabled at the date of his last insured. (Tr. 26.)

### V. ANALYSIS

Plaintiff presents four issues on appeal. Plaintiff first argues that the ALJ erred in failing to find "simple, routine, repetitive tasks" limitations in Plaintiff's mental RFC assessment. (Docket Entry 13 at 5-6.) Defendant asserts that the ALJ properly addressed this issue by evidence of the hypothetical question presented to the VE. (Docket Entry 15 at 4-6.) Next, Plaintiff contends that

6

the ALJ failed to properly evaluate Plaintiff's credibility determinations as set out in *Craig*.[6] Specifically, Plaintiff asserts that the "[Boilerplate language used by the ALJ at Step One was incorporated into the decision without thought, solely to give the appearance of formal compliance with *Craig v. Chater*." (Docket Entry 13 at 6.)  Defendant contends otherwise, arguing that the ALJ followed the appropriate standards set out in 20 C.F.R. §§ 404.1529 and 416.929 by properly discrediting some of Plaintiff's statements while accepting others.  (Docket Entry 15 at 7-10.) Thirdly, Plaintiff argues that the ALJ failed to fully develop the record, specifically by not obtaining opinions from Plaintiff's treating physicians. (Docket Entry 13 at 8.)  Lastly, Plaintiff argues that the ALJ erred in finding that Plaintiff retains the capacity to do light work with a sit/stand option. (Docket Entry 13 at 9-10.)  Defendant contends that the ALJ RFC assessment is "supported by the record as a whole, and particularly by the RFC evaluations of the state agency physicians." (Docket Entry 15 at 12.)

### A.  Plaintiff's Mental RFC

Plaintiff argues that the ALJ erred in failing to find that Plaintiff is "limited to simple, routine, repetitive tasks in a non-anxiety-producing, non-production-work environment." (Docket Entry 13 at 5.)  Plaintiff asserts that the opinions of Jeffrey Feldman and David C. Johnson both support this notion.  *Id.*  Defendant contends that the ALJ considered Plaintiff's mental limitations as a result of the questions presented to VE. (Docket Entry 15 at 4-6.)  After careful consideration of the record, this Court concludes that substantial evidence supports the ALJ's conclusion of Plaintiff's RFC with regard to mental limitations; thus, this argument is without merit.

As previously stated, the RFC assessment outlines the maximum work capabilities of a claimant based upon physical and mental limitations caused by impairments, and related symptoms

---

[6]  *See Craig*, 76 F.3d 585 (4th Cir. 1996).

that follow.[7]  In assessing a claimant's RFC, the ALJ must consider all relevant evidence, including: medical history, laboratory findings, reports of daily activities, medical source treatments, effects of symptoms, including pain that is reasonable attributed to a medically determinable impairment, evidence from attempts to work, and work evaluations.  SSR 96-8p.  With regard to mental limitations, the ALJ must "[F]irst assess the nature and extent of [claimant's] mental limitations and restrictions and then determine [claimant's] residual functional capacity for work activity on a regular and continuing basis."  20 C.F.R. § 404.1545(c).  A claimant's work ability may be reduced by "[L]imitations in understanding, remembering, and carrying out instructions . . . ." *Id.*

In his findings, the ALJ concluded that Plaintiff's RFC allows him to perform light work with a sit/stand option and with "nonexertional limitations of postural and environmental limitations." (Tr. 24.)  Although the ALJ did not explicitly state the consideration given to Plaintiff's mental limitations, he nonetheless took into account the *entire* record, which in several instances addressed Plaintiff's mental limitations.  For example, the ALJ considered, as part of the record, the opinions of Dr. Johnson and Dr. Feldman.[8]  Dr. Johnson indicated that Plaintiff "[A]ppears capable of understanding instructions adequately to perform simple, routine, and repetitive tasks."  (Tr. 263.)  He further states, "To the degree his various medical problems affect his ability to work needs to be determined by his doctor."  (*Id.*)  Dr. Feldman states that "[Plaintiff's] combinations of medical and psychiatric difficulties appear to currently make him disabled such that he would not be able to cope with the demands of a competitive work environment."  (Tr. 397.)

---

[7] *See* 20 C.F.R. § 404.1545(a)(1); *Hines*, 453 F.3d at 562.
[8] In a separate issue on appeal, Plaintiff argues that the ALJ failed to consider the opinion of Dr. Feldman. (Docket Entry 13 at 8.)  Plaintiff also asserts this notion with regard to his mental RFC.  (*Id.* at 6.)  As later discussed in this recommendation, the Court concludes that the ALJ properly considered the evidence of record, including the opinion of Dr. Feldman.

8

Case 1:10-cv-00238-NCT-JLW   Document 16   Filed 02/05/13   Page 8 of 15

As Defendant points out, the ALJ gave further consideration to Plaintiff's mental RFC as evidenced through the questioning of the VE. (Docket Entry 15 at 4-5.) Presented as a hypothetical question, the ALJ asked the VE:

> Assume that I find that due to mental limitations that this hypothetical person would be limited to [sic] and stress that would cause anxiety, that this hypothetical person would be unable to perform jobs requiring complex decision making; jobs where he had to have, make constant changes; or dealing with pricey situation[s]. Assume that I find that this hypothetical person could interact appropriately with supervisors and coworkers, so there is no limitation there . . . If you have these limitations as just described, what job, if any, would this hypothetical person be vocationally qualified to perform?

(Tr. 59.)[9] The VE responded:

> A toy assembler would be appropriate, Your Honor. An employer would provide a table that's waist high and a stool or a chair for them to be able to change positions throughout the day and relieve postural limitations that they may have. It is light, SVP of 2, and it is Dictionary of Occupational Titles number 731.687-034. Another job the individual could perform that would meet Her Honor's hypothetical would be a small products assembler and that would be Dictionary of Occupational Titles number 706.684-022, it is light, SVP 2, as well, or a bandoleer packer, which is light, SVP 1, and I should clarify that by saying that is a hand packer and not an omniscient packer, Dictionary of Occupational Titles number 920.687-034, it is light, SVP of 1.

(Tr. 59-60.)

Plaintiff's argument appears to rest on two assertions. First, Plaintiff believes that the ALJ's findings should have mirrored the disability determination of Dr. Feldman, or at least been identical to the opinion of Dr. Johnson. (*See* Docket Entry 13 at 5.) Second, Plaintiff's argument insists that the ALJ relied solely on the opinion of Dr. Gloria Edmunds, who Plaintiff believes "[M]ischaracteriz[ed] what Johnson had said." (*Id.*; *see also* Tr. 321.)[10] In both instances, Plaintiff

---

[9] As Defendant points out (Docket Entry 15 at 6), the transcript appears to display a typographical error during the hypothetical question presented to the VE. Notwithstanding this apparent misstep, it is clear based upon the remainder of the hypothetical question that the ALJ's intent was to inquire about jobs with limited stress that do not involve complicated decisions and work that is somewhat routine.

[10] Dr. Edmunds stated that Plaintiff "[m]ay have difficulty tolerating stress . . . " (Tr. 321) and Dr. Johnson stated that Plaintiff "[s]till has difficulty tolerating stress . . ." (Tr. 263.)

9

appears to ignore the fact that the ultimate disability determination is at the discretion of the ALJ.[11] It is not the responsibility of this Court to reverse such determination so long as the ALJ's decision is supported by substantial evidence.[12] The ALJ was not required to find that Plaintiff is "disabled" or "limited to simple, routine, repetitive tasks." Moreover, Defendant asserts (Docket Entry 15 at 5-6) and this Court agrees, that the ALJ's RFC assessment included similar limitations to those which Plaintiff argues. The VE suggested jobs at reasoning levels one and two, which require, at most, one month's training.[13] Some courts have concluded that a reasoning level two is consistent with "simple, repetitive, routine tasks;"[14] therefore, the ALJ's hypothetical question which yielded level one and level two jobs appears to be directly in line with Plaintiff's limitations.[15]

In sum, the ALJ appropriately considered Plaintiff's mental limitations in assessing his RFC. The ALJ's failure to *explicitly* state Plaintiff's mental limitations in his findings is at most harmless error. Substantial evidence of record clearly illustrates that such consideration was given. Therefore, Plaintiff's argument is without merit.

### B. Plaintiff's Credibility Determination

Plaintiff next argues that the ALJ erred in failing to make an appropriate credibility determination based upon the factors set out in *Craig*. (Docket Entry 13 at 6-8.) Plaintiff specifically asserts that the ALJ's Step One finding was "purely pro forma" and that the ALJ "showed *no* understanding that as a matter of law, a positive Step One finding means that the

---

[11] *See* 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1); 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2)
[12] *Craig*, 76 F.3d 585, 589 (4th Cir. 1996) (citing 42 U.S.C §§ 405(g) and 1383(c)(3); *Coffman*, 829 F.2d at 517); *see also Hays*, 907 F.2d at 1456.
[13] Specific Vocational Preparation at Level 1 requires training by "short demonstration only." *Dictionary of Occupational Titles* 1009 (4th ed. 1991). Level 2 requires "[A]nything beyond short demonstration up to and including 1 month." *Dictionary of Occupational Titles* 1009 (4th ed. 1991).
[14] *See Burnett v. Astrue*, No 2:08-CV-9-FL, 2009 WL 863372, at *5 (E.D.N.C. Mar. 24, 2009); *Miller v.Astrue*, 2008 U.S. Dist. LEXIS 22347 (S.D. W. Va. Mar. 19, 2008)
[15] Plaintiff's argument is somewhat unclear as it assumes that a limitation to "simple, repetitive, routine tasks" would have definitively altered the ALJ's finding that Plaintiff was not disabled. Based upon the evidence of record, a mental RFC with such limitations would still find Plaintiff to be disabled.

10

claimant has a medical condition that could produce the pain or other symptoms *in the amount and degree alleged.*" (*Id.* at 6)(citing *Craig*, 76 F.3d at 594)(emphasis added.) Defendant argues that Plaintiff's point here is "difficult to discern" since the ALJ's Step One finding is "wholly favorable to Plaintiff." (Docket Entry 15 at 7.) This Court concludes that the ALJ properly assessed the two-step process in *Craig*; therefore, Plaintiff's credibility determination is appropriate.

The Fourth Circuit has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms which includes determination of whether the claimant is credible. The first step requires the ALJ to determine if there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. The second step requires an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09CV364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.*

At Step One, the ALJ concluded that "[t]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 25.) At Step Two, the ALJ concluded that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual

functional capacity assessment." (*Id.*) In his findings, the ALJ noted that Plaintiff's symptoms "[a]re not documented as of severity as required by the regulations herein." (*Id.*) Plaintiff testified to leg swelling when he walks and sits, anxiety attacks most likely caused from the stress of his children, and naps throughout the day as a result of medication. (Tr. 42-46.) Plaintiff testified that he could stand with his cane for 30 minutes and without his cane for 40 minutes.[16] (Tr. 51.) He stated that he could sit for 20 minutes before moving around. (*Id.*) Plaintiff also testified that he does not do much housework since his girlfriend does everything. (Tr. 46.) With regard to depression, Plaintiff testified that his medication is helping him with that. (Tr. 55.)

With regard to Step One, Plaintiff appears to rest his argument on the ALJ's failure to use the specific language in *Craig*, "*in the amount and degree alleged.*" (Docket Entry 13 at 6.) Notwithstanding the ALJ's failure to use the specific language in *Craig*, the ALJ made a Step One finding favorable to the Plaintiff, thus making this argument inconsequential. There is objective medical evidence that could reasonably cause Plaintiff's alleged symptoms. For example, reasonable minds would agree that obesity could reasonably cause back and feet pain. This Court chooses to address this argument by reiterating that the ALJ's Step One finding was to the *benefit* of Plaintiff and that substantial evidence supports this finding.

Plaintiff's next contention that the ALJ's Step Two finding is erroneous based upon an improper Step One finding is without merit. This argument rests upon two assertions. First, Plaintiff suggests that the ALJ discredited Plaintiff based upon a misstatement of the record. (*Id.* at 7-8.) Plaintiff indicated that he quit Wal-Mart due to his leg and back pain. (Tr. 36.) The ALJ's

---

[16] During Plaintiff's hearing, Plaintiff's attorney asked Plaintiff, "Sir, how long can you stand?" (Tr. 50.) Plaintiff responded, "I can stand up for about 20, 25, 30 minutes." (*Id.*) Plaintiff's attorney stated, "Okay. Is that with or without your cane?" (Tr. 51.) Plaintiff responded, "That is with my cane." (*Id.*) Plaintiff's attorney then asked, "Okay. And, how long can you stand without your cane. Just stand, not walk." (*Id.*) Plaintiff stated, "I probably could stand a pretty good long time. I would probably say about 40, 45 minutes if I had to stand straight up without my cane." (*Id.*)

12

findings indicated that Plaintiff quit to care for his children.[17] (Tr. 21.) This appears to be a misstatement of the record; however, there is no indication that the ALJ believed that Plaintiff lied at his hearing. Furthermore, this appears to have little or no influence on the ALJ's credibility determination.[18] Plaintiff argues that if Step One in *Craig* was proper, the ALJ "would have given [Plaintiff's] testimony great weight and would not have so readily misconstrued the record." (Docket Entry 13 at 7 (footnote omitted).) In his second assertion, Plaintiff indicates that the ALJ provided no reasons for not believing Plaintiff's testimony. (*Id.* at 8.) The ALJ did, however, state that "[c]laimant's alleged symptoms are not documented as of the *severity* as required by the regulations herein." (Tr. 24.)(emphasis added.) Rather than not believing Plaintiff, the ALJ appeared to be focused on the seriousness of the alleged symptoms. The ALJ gave great weight to the opinions of state agency physicians and, taking into consideration the record as a whole, formulated his conclusion.

Although Plaintiff disagrees with the ALJ, the Court may not make credibility determinations or substitute its judgment for that of the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Basu-Dugan v. Astrue*, No. 1:06CV00007, 2008 WL 3413296, *1 (M.D.N.C. August 8, 2008). Other courts have recognized that the ALJ's credibility determinations will be upheld so long as they have "some support in the record and are not patently wrong." *Heron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994)(citing *Wolfe v. Shalala*, 997 F.2d 321, 326 (7th Cir. 1993).) The mere fact that the ALJ did not find Plaintiff to be fully credible does not suggest that her determination was in error. Based upon review of the record, substantial evidence supports the ALJ's decision; therefore, this argument fails.

---

[17] Dr. Neil Garrett indicated that Plaintiff "took care of the children and his wife worked until they were separated in February 2006." (Tr. 256.)
[18] The ALJ's misstatement of the record appears under her analysis of Plaintiff's severe impairments. (Tr. 21.) In her RFC findings, the ALJ makes no mention of whether she believed Plaintiff was lying about his separation from Wal-Mart.

### C. Opinion of Dr. Feldman

Plaintiff next argues that the ALJ erred in not fully developing the record, specifically by ignoring the medical opinion of Dr. Feldman, an examining physician. (Docket Entry 13 at 8.) To properly develop a claimant's complete medical history, the ALJ must "make every reasonable effort to help [claimant] get medical reports from [claimant's] own medical sources. 20 C.F.R. § 404.1512(d); *see also* 42 U.S.C. § 423(d)(5). In this case, the evidence of record includes Plaintiff's medical reports from Crystal Coast Family Practice (Tr. 243-253), Piedmont Health Services, Inc. (Tr. 295-305, 327-367), Alamance Regional Medical Center (Tr. 368-382), and Wake Forest University Baptist Medical Center (Tr. 396-402). Plaintiff argues that Dr. Feldman's opinion was not considered; however, the ALJ notes in her findings the medical reports from Wake Forest University Baptist Medical in which Dr. Feldman is the treating physician. (Tr. 22.) Plaintiff does not reference any of his medical sources[19] that were not considered. Thus, Plaintiff's argument is unavailing.

### D. Plaintiff's Physical RFC

The fourth issue on appeal turns to Plaintiff's physical RFC. Plaintiff argues that the ALJ committed factual error in that he "cannot do what the ALJ found he can do" and legal error "purely by implication." (Docket Entry 13 at 9-10.) Defendant argues that the ALJ's RFC assessment is supported by evidence of record and is consistent with the evaluations of state agency physicians. (Docket Entry 15 at 12.) Based upon a review of the record, this Court concludes that the ALJ's finding that Plaintiff's RFC to "perform light work . . . except need sit/stand option with nonexertional limitations of postural and environmental limitations" is supported by evidence; therefore, Plaintiff's argument fails.

---

[19] This includes medical sources of record and those not of record.

This recommendation has previously set out the appropriate assessment the ALJ must undertake to support his RFC findings. With regard to the alleged factual and legal errors, the Court believes that substantial evidence supports the ALJ's finding that Plaintiff is limited to light work which includes lifting no more than 20 pounds at a given time with frequent lifting up to 10 pounds.[20] The ALJ's limitations are supported by state agency physicians, Dr. Perry Caviness and Dr. Bertron Haywood, both of whom reviewed a prior assessment and maintained that Plaintiff's medium physical RFC (including standing/walking for a total of 6 hours) was appropriate. (Tr. 294, 308.) Considering the objective medical evidence and Plaintiff's subjective complaints, the ALJ imposed even greater limitations on Plaintiff by finding claimant capable of performing not medium,[21] but *light* work. Both Plaintiff and Defendant recognize that factual findings are entitled to great deference,[22] and this Court finds no reason to deviate from such a well-settled tenet. Thus, this argument fails.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be **GRANTED** and the final decision of the Commissioner be upheld.

*Joe L. Webster*
United States Magistrate Judge

Durham, North Carolina
February 4, 2013

---

[20] *See* 20 C.F.R. §§ 404.1567(b) and 416.967(b).
[21] "Medium work involves lifting no more than *50 pounds* at a time with frequent lifting or carrying of objects weighing up to *25 pounds*." 20 C.F.R. §§ 404.1567(c) and 416.967(c)(emphasis added).
[22] *See Copeland v. Bowen*, 883 F.2d 68, 1989 WL 90545 at *2 (4th Cir. 1989); *Woody v. Barnhart*, 326 F. Supp. 2d 744, 748 (W.D. Va. 2004).