# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GREGORY SHORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:10CV238 |
| | ) |
| CAROLYN W. COLVIN[1], | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

On February 5, 2013, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636. Plaintiff filed objections to the Recommendation within the time limit prescribed by Section 636, and Defendant filed a response.

The Court has reviewed the parties' submissions de novo and finds they do not change the substance of the United States Magistrate Judge's rulings which are affirmed and adopted. Plaintiff's objections to the Magistrate Judge's Recommendation are addressed below.

Plaintiff's Motion for Judgment on the Pleadings [Doc. # 12] is **DENIED**, Defendant's Motion for Judgment on the Pleadings [Doc. # 14] is **GRANTED**, and this action is **DISMISSED**.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.

Judicial review of an ALJ's denial of social security benefits is authorized by 42 U.S.C. § 405(g). A reviewing court must "uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through an application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Smith v. Chater, 99 F.3d 635, 638 (4th Cir.1996). In reviewing for substantial evidence, a court is not to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). "However, the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [ALJ's] findings, and that his conclusion is rational." Vitek v. Finch, 438 F.2d 1157, 1157-1158 (4th Cir. 1971).

II.

First, Plaintiff argues that the ALJ erred in not considering Dr. Jeffrey Feldman's opinion in determining Mr. Shore's residual functional capacity. [Doc. # 18] However, the record indicates that the ALJ considered Dr. Feldman's report but chose to place greater weight on the State Physician's report. Contrary to Plaintiff's arguments, the Wake Forest Medical Center report prepared by Dr. Feldman and mentioned by the ALJ in her opinion, is not mere "raw medical data," [Doc. # 18] rather it contains Dr. Feldman's opinions and medical impressions based on Mr. Shore's self-reported

2

symptoms. (Tr. 401.) Therefore, Dr. Feldman's opinion was actually considered by the ALJ when she reviewed the report.

The ALJ was justified in placing greater weigh on the State Physician's report versus Dr. Feldman's report. Dr. Feldman did not conduct an independent psychiatric evaluation, but merely related what Mr. Shore "reported" to him when they spoke. (Tr. 400.) In his report, Dr. Feldman "recommended to Mr. Shore that he be evaluated psychiatrically . . . [at] the Psychiatric Clinic at UNC Chapel Hill . . . ." (Tr. 401.) Dr. Feldman concluded that Mr. Shore's self-reported conditions and symptoms would make him psychiatrically disabled for a "competitive work environment." (Tr. 401.) Dr. Feldman did not render an opinion as to Mr. Shore's physical residual functional capacity stating that, "[h]e certainly appears to be medically disabled as well, but that would have to be determined by a medical physician." (Tr. 401.)

Unlike Dr. Feldman's report, the State Physician's report included evaluations conducted to determine Mr. Shore's mental and physical residual functional capacity. The State Physician conducted a mental evaluation with various cognitive tests. (Tr. 262-63.) (citing Mr. Shore's successful completion of math problems, memory tests, current event questions, and the interpretation of proverbs in the state agency evaluation of Mr. Shore's mental capacity). He concluded that Mr. Shore was capable of performing "simple, routine, and repetitive tasks" but would have "problems keeping up with others in a competitive job setting." (Tr. 263.) He was found to be "alert and well oriented" and generally able to follow simple instructions. (Tr. 262-63.) With regards to physical limitations, the State Physician concluded that Mr. Shore was capable of medium physical work. (Tr. 292.) In considering the medical evidence, the

ALJ placed even greater limitation on Mr. Shore by concluding in her opinion that Mr. Shore was capable of only *light* physical work. (Tr. 24.) As shown by the record, the ALJ properly considered Dr. Feldman's report when making her findings.

III.

Plaintiff also argues that the ALJ erred in not conducting a function-by-function assessment in order to obtain a proper residual functional assessment. [Doc. # 18] However, the ALJ largely adopted the assessments made by the State Physicians in Exhibits 5F (mental residual functional assessment) (Tr. 260.) and 10F (physical residual functional assessment) (Tr. 285.) as part of her residual functional assessment. The ALJ placed even greater limitation on Mr. Shore than the assessment made by the State Physicians by assuming that Mr. Shore was capable of only *light* physical work instead of *medium* physical work. The ALJ describes the physical residual functional capacity assessment made by the State Physicians in her opinion (Tr. 22.), and she later concludes "the above residual functional capacity assessment is supported by the record as a whole with great weight being given to the State Agency physicians' findings (Exhibits 5F and 10F)." (Tr. 25.)

IV.

Finally, Plaintiff argues that the ALJ erred by not accepting the statements made by Mr. Shore regarding the amount and degree of his symptoms in her findings of fact. Plaintiff argues that the ALJ should have made an adverse credibility finding if she did not believe his statements.

However, the ALJ did make an adverse credibility finding in regards to Mr. Shore's statements when she stated in her opinion that:

4

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms *are not credible* to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 25.) (emphasis added)

While the ALJ believed that Mr. Shore suffered from multiple physical and mental impairments, the State Physician's reports support her conclusion that Mr. Shore is nonetheless capable of light physical work and would be able to perform work under low stress conditions.

The ALJ properly evaluated Mr. Shore's residual functional capacity, and her conclusions are supported by substantial evidence in the record.

V.

Plaintiff's Motion for Judgment on the Pleadings [Doc. # 12] is **DENIED**, Defendant's Motion for Judgment on the Pleadings [Doc. # 14] is **GRANTED**, and this action is **DISMISSED**.

This the 29th day of March, 2013.

          /s/ N. Carlton Tilley, Jr.
          Senior United States District Judge